UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY GARRETT, <br><br> Defendant. | Case No. 93-cr-40032-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant Anthony Garrett's motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 201). The Government has responded (Docs. 205-07), and Garrett has replied to that response (Doc. 210).

**I.   Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>        (i) extraordinary and compelling reasons warrant such a reduction. . .
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause, there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180.  The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.*  Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.*  A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.*  Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case.  *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance.  That policy statement adds the provision requirement that the defendant not be a danger to the safety of any other person or to the community.  U.S.S.G. § 1B1.13(2).[1]  The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

>   **(A)    Medical Condition of the Defendant.—**
>   (i)    The defendant is suffering from a terminal illness (i.e., a serious and
>          advanced illness with an end of life trajectory).  A specific prognosis of life
>          expectancy (i.e., a probability of death within a specific time period) is not
>          required.  Examples include metastatic solid-tumor cancer, amyotrophic
>          lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   (ii)   The defendant is—
>          (I)    suffering from a serious physical or medical condition,

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

    (II)  suffering from a serious functional or cognitive impairment, or
    (III)  experiencing deteriorating physical or mental health because of the aging process,
  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B)** **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment,

\* \* \*

**(D)** **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, No. 20-2893, 2021 WL 1747898, \*2 (7th Cir. May 4, 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

## II. Analysis

On November 17, 1993, a jury found Garrett guilty of conspiring to distribute and possess

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

3

with intent to distribute crack cocaine and of using and carrying a firearm during and in relation to a drug trafficking crime (Doc. 64). Using the 1993 Sentencing Guidelines Manual, the Court determined Garrett's relevant conduct was at least 500 grams but less than 1.5 kilograms of crack cocaine, resulting in a base offense level of 36.[3] His offense level was reduced by two points under U.S.S.G. § 3B1.2(b) because he was a minor participant in the offense, yielding a total offense level of 34. However, the Court further found that Garrett was a career offender under U.S.S.G. § 4B1.1 based on prior violent felony convictions, which raised his total offense level to 37. Considering Garrett's criminal history category of VI, established by his career offender status under U.S.S.G. § 4B1.1, this yielded a sentencing range of 360 months to life in prison for the conspiracy count.

The Court (District Judge James L. Foreman) imposed a sentence of 360 months for the conspiracy count plus a mandatory 120-month consecutive sentence for the firearm count, for a total sentence of 480 months (Doc. 87 & 91).[4] In sentencing Garrett, the Court considered his health condition as set forth in the presentence investigation report ("PSR"), including a possible history of cardiac problems, hemoptysis (coughing up blood), substance abuse, and bronchitis. The Court of Appeals affirmed that sentence. *United States v. Garrett*, 45 F.3d 1135 (7th Cir.), *cert. denied*, 514 U.S. 1134 (1995).

Garrett completed his term of incarceration and began his term of supervised release on July 19, 2019. On February 5, 2020, Garrett admitted to violations alleged in a petition to revoke his supervised release. The Court granted the petition and sentenced him to serve 24 months in prison. Garrett is scheduled to be released on October 4, 2021. *See* https://www.bop.gov/inmateloc.

---

[3] This relevant conduct would have led to a lower based offense level in light of retroactive amendments to the Sentencing Guidelines, but those changes made no difference to Garrett's ultimate sentence because of his career offender status (Docs. 157, 176, & 179).

[4] The Court later vacated the sentence and conviction on Count 2 pursuant to 28 U.S.C. § 2255 in light of *Bailey* v. *United States,* 516 U.S. 137 (1995). The 360-month sentence on Count 1 remained unchanged (Doc. 123).

Garrett, now 64 years old, asks the Court for immediate compassionate release in light of the COVID-19 pandemic, his race (African-American), his age, and his health conditions (benign tumor of the right humerus (upper right arm), high cholesterol, high blood pressure, peripheral vascular disease (including bypass surgery in 2004), cataracts, glaucoma, gastro-esophageal reflux disease, osteoarthritis of the knee and a lump in his breast). He argues that these factors, individually and in combination, place him at an unacceptably high risk of contracting COVID-19 and suffering serious consequences from that disease. He points out that he was unable to complete his GED and never received drug treatment while in prison. He argues that if he was unable to benefit from such rehabilitative programs in his 26 years of past incarceration, he is unlikely to be able to benefit now from further rehabilitative prison programing while serving his supervised release sentence. He believes this will make his 24-month sentence harsher than other such sentenced because it will end up being purely punitive.

In response, the Government contends that none of Garrett's health conditions, either individually or in combination with the COVID-19 pandemic, are extraordinary or compelling reasons warranting compassionate release. It notes that these Garrett's health problems did not impede him from violating his supervised release conditions in numerous ways and suggests that Garrett would continue to violate rules were he released now. It further notes that the BOP is appropriately treating Garrett's health conditions or, in two cases, that the condition has resolved. The Government acknowledges racial disparities in health outcomes, but suggests those disparities are minimized in federal prison where inmates of all races are in the same living conditions and receive the same medical care irrespective of race. The Government also points to the BOP's extraordinary efforts to stem the spread of COVID-19 in its facilities. Finally, the Government argues that Garrett remains a danger to others and the community in light of his extensive and long-running criminal history, including his multiple supervised release violations only six months after

his release. The Government has not invoked exhaustion of remedies as a defense so has waived that argument.

As for the defendant's physical condition, the Court does not dispute that he suffers from serious health conditions and an advanced age that may amount to extraordinary and compelling reasons for compassionate release in combination with the risk from the COVID-19 pandemic. However, it appears Garrett's medical needs are being appropriately treated in prison, and the BOP is making extraordinary—although not always successful—efforts to stem the spread of COVID-19. There is nothing to suggest that, in prison, Garrett is not receiving adequate medical care or is being inadequately protected from COVID-19 because of, or as an unintended consequence of, his race.

But even if Garrett's health problems, his race, his advanced age, and the COVID-19 pandemic were extraordinary and compelling reasons for release, those reasons would not warrant release in light of the § 3553(a) factors. The Court's analyses of the § 3553(a) factors at the original sentencing hearing and at the supervised release hearing continue to apply now. Garrett's history of criminal activity is extensive, and he continued to recidivate shortly after given the opportunity. In addition to being a career offender, he has a history of criminal arrests and convictions from age 18 until his arrest for his federal drug offense. And despite serving 26 years in prison, he returned to criminal activity within about six months of his release despite his medical infirmities. It is clear that Garrett did not make substantial progress toward rehabilitation in prison—for whatever reason—but that fact only increases the likelihood that when released again, he will go back to breaking the rules. The Court believes the full 24 months of imprisonment for his revocation sentence are necessary to punish Garrett, to promote respect for the law by Garrett and others, and to impress upon Garrett an appreciation for the seriousness of his crimes. The community should not have to bear the burden of his future criminal activities until he has been fully and appropriate punished for his past ones.

As for the COVID-19 pandemic in particular, the Court acknowledges the danger posed to prisoners who live in close quarters and often cannot practice social distancing. However, the Court notes that the BOP has been administering COVID-19 vaccines to inmates, *see* BOP, COVID-19 vaccine implementation, https://www.bop.gov/coronavirus/, which will greatly reduce the threat from the disease. In fact, it has already fully vaccinated nearly half of the inmates at FCI-La Tuna, where Garrett is housed. *Id.*; BOP, FCI La Tuna, https://www.bop.gov/locations/institutions/lat. Although the Court will not order the defendant released at this time, it strongly recommends he be given a high priority in the BOP's vaccination efforts.

### III. Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for compassionate release (Doc. 201) but **STRONGLY RECOMMENDS** the BOP give him high priority for the COVID-19 vaccine if it has not already done so.

**IT IS SO ORDERED.**
**DATED:  May 11, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**